IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLTON LANE and IVAN WHITE, | : | |
| | : | |
| Plaintiffs, | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| SHIRLEY MOORE SMEAL, | : | |
| MELISSA ROBERTS, | : | |
| DIANE KASHMERE, | : | |
| TABB BICKELL, | : | |
| MICHAEL WENEROWICZ, | : | |
| KENNETH GOODMAN, | : | |
| KEVIN KAUFFMAN, and | : | |
| CALEB YOUNKER, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Carlton Lane and Ivan White, through counsel, bring this action under the Civil Rights Act, 42 U.S.C. §§ 1983, alleging injury through violations of the First and Fourteenth Amendments of the Constitution of the United States by nine employees of the Pennsylvania Department of Corrections.

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred at the State Correctional Institution at Huntingdon

("SCI Huntingdon") in Huntingdon County, PA, and at the offices of the Pennsylvania Department of Corrections ("DOC") in Cumberland County, PA.

## PARTIES

3. Plaintiff Carlton Lane is an adult male citizen, age 62, who is serving a life sentence in the custody of DOC. He is housed at SCI Huntingdon.

4. Plaintiff Ivan White is an adult male citizen, age 50, who is serving a life sentence in the custody of DOC. He is housed at SCI Huntingdon.

5. Defendant John E. Wetzel is Secretary of DOC. He is administrative head of the department. Wetzel oversees DOC's budget, prisons, and staff. He sets the objectives for the department. He guides and participates in development of its policies and procedures. Wetzel has final approval of all DOC policies, and he is responsible for their implementation throughout the prisons operated by DOC. Wetzel is a political appointee. He was confirmed by the Senate in May 2011, and he reports to the Governor of the Commonwealth.

6. Defendant Shirley Moore Smeal is Executive Deputy Secretary of DOC. She participates in the formulation of DOC policies and procedures, and she advises Wetzel on the development of DOC policies and procedures. Moore Smeal reports to Wetzel.

7.      Defendant Melissa Roberts was DOC Policy Coordinator until recently. Roberts participated in the formulation of DOC policies and procedures. Roberts advised Wetzel and Moore Smeal on the development of DOC policies and procedures. Roberts reported to Moore Smeal.

8.      Defendant Diane Kashmere recently succeeded Melissa Roberts as DOC Statewide Policy Coordinator. Kashmere participates in the formulation of DOC policies and procedures. Kashmere advises Wetzel and Moore Smeal on the development of DOC policies and procedures. Kashmere reports to Moore Smeal.

9.      Defendant Tabb Bickell is Executive Deputy Secretary for Institutional Operations of DOC. Until recently, he was a Regional Deputy Secretary of DOC. As RDS, Bickell participated in the formulation of DOC policies and procedures, and he advised Wetzel on the development of DOC policies and procedures. Bickell continues to perform those functions in his current role. Bickell reports to Wetzel.

10.     Defendant Michael Wenerowicz is Regional Deputy Secretary for the Eastern Region of DOC. Wenerowicz participates in the formulation of DOC policies and procedures. Wenerowicz advises Wetzel on the development of DOC policies and procedures.

11.     Defendant Kenneth Goodman is a corrections officer who holds the rank of major. Major Goodman is DOC Chief of Security. He reviews all policies

and procedures that relate to security. Goodman participates in the formulation of DOC policies and procedures. Goodman advises senior DOC staff on the development of DOC policies.

12. Defendant Kevin Kauffman is Superintendent of SCI Huntingdon. Kauffman has responsibility for all operations at the prison. He implements DOC policies and procedures in the local setting. Kauffman is responsible to ensure that staff comply with DOC policy and procedures. Kauffman reports to Bickell.

13. Defendant Caleb Younker is a corrections officer who holds the rank of lieutenant. Lieutenant Younker is in charge of day to day operations in the distribution of legal mail at SCI Huntingdon. Younker reports to Kauffman.

14. Each defendant was acting under color of state law during the events described herein.

15. Each defendant is sued in his or her individual capacity on the basis of personal involvement in the events described herein.

## FACTS

### Prior Litigation of the Plaintiffs

16. Carlton Lane filed a civil suit against several DOC staff and contractors in 2014. The case is <u>Lane v. Tavares, et al.</u>, No. 3:14-cv-991 in this district.

17. Ivan White filed a civil suit against several DOC staff in 2016. The case is <u>White v. Wireman, et al.</u>, No. 1:15-cv-2254 in this district.

18. Lane and White are represented by the same counsel.

19. Both Lane's case and White's case include claims of interference with access to their counsel, although the two lawsuits are different in other respects.

20. Accommodations for conferences between inmates and their attorneys at SCI Huntingdon are inadequate and sometimes are unavailable.

21. Lane and White have relied almost exclusively on the mail to communicate with their attorney about their litigation.

22. Lane and White both needed to keep in close communication with their attorney throughout 2018 because both lawsuits were actively proceeding.

**Sudden Change of Prison Mail Procedure**

23. In early September 2018, without warning, Defendant Wetzel ordered Defendant Kauffman and other prison superintendents to halt delivery of all mail, including privileged communications from attorneys that are clearly marked as confidential communication sent from law offices. (hereinafter "legal mail").

24. Wetzel issued a revised version of the mail policy, DC-ADM 803, effective October 3, 2018. The policy is available for download from DOC's website, www.cor.pa.gov.

25. Since early September 2018, staff at SCI Huntingdon have confiscated every letter that has arrived in the mail for Lane or White from their attorney. No item of legal mail has been delivered.

### Interference With Legal Mail

26. Under the revised DC-ADM 803, Defendants Kauffman and Younker have caused each incoming piece of legal mail for Lane or White to be opened and photocopied. The original has been retained by SCI Huntingdon, and the photocopy has been given to the intended recipient, Lane or White.

27. On several occasions, the photocopies of the legal mail were incomplete or illegible.

28. On several occasions, Lane and White were denied the opportunity to see the original documents in the legal mail addressed to them.

29. On several occasions, the original documents had highlighting and other notations in color, but the photocopy was black and white, so that information meant to be conveyed in the legal mail was lost.

30. On several occasions, legal mail for Lane or for White was delayed for more than 48 hours.

31. For several months, Lieutenant Younker or officers acting on the instruction of Younker and Superintendent Kauffman held White's legal mail in a

room that was contaminated with toxic substances, as the officers informed White. The officers themselves wore hazmat protection, including gloves and masks, to handle the legal mail. White requested similar hazmat protection, but the officers refused to provide it.

32. White feared to enter the contaminated room without the same hazmat protection that the officers were wearing. When White declined to enter the contaminated room without protection, Younker or officers acting on the instruction of Younker and Kauffman marked White's legal mail as "refused" although they had not offered the legal mail to White or given White an opportunity to refuse it. Younker or officers acting on the instruction of Younker and Kauffman retained the mail at SCI Huntingdon for two or three weeks, and then had the U.S. Postal Service return the legal mail to White's attorney.

33. On one occasion, Younker or officers acting on the instruction of Younker and Kauffman closely examined and read legal mail that had arrived for White. The officers disliked the content of one page of the legal mail, so they confiscated that page without giving White a copy of it.

34. On numerous occasions, Younker or officers acting on the instructions of Younker and Kauffman opened and examined White's legal mail without allowing White to see it directly.

35. On numerous occasions, Lieutenant Younker or officers acting on the instructions of Younker and Kauffman opened and examined Lane's legal mail without allowing Lane to see it directly.

36. On information and belief, Kauffman and Younker caused electronic images of Lane's and White's legal mail to be retained in the memory of a photocopier each time that they copied the mail. Kauffman retains custody of the photocopier and the images stored in its memory.

37. The wrongful actions of the Defendants continue to the present day through the implementation and enforcement of DC-ADM 803 as to handling of legal mail at SCI Huntingdon.

## Impediments to Litigation

38. Implementation of DC-ADM 803's provisions for the handling of legal mail by Superintendent Kauffman and Lieutenant Younker at SCI Huntingdon has improperly interfered with free speech between Lane and his attorney and between White and his attorney to an extent impermissible under law.

39. Interference with Lane's legal mail since early September, 2018 has hindered his efforts to litigate <u>Lane v. Tavares</u> and to seek an amicable resolution to that action.

40. Interference with Lane's legal mail has discouraged and impeded communication between Lane and his attorney, has engendered unwarranted doubt and distrust, and consequently has threatened the viability of the representation.

41. Interference with White's legal mail since early September, 2018 has hindered his efforts to litigate White v. Wireman. Without access to counsel, White has been unable to serve discovery requests or to respond to discovery requests in that action.

42. Interference with White's legal mail has discouraged and impeded communication between Lane and his attorney, has engendered unwarranted doubt and distrust, and consequently has threatened the viability of the representation.

43. Implementation of DC-ADM 803's provisions for the handling of legal mail by Superintendent Kauffman and Lieutenant Younker at SCI Huntingdon was sudden, abrupt, and arbitrary, in that it was not preceded by identification of any legitimate state interest that it was reasonably designed to advance.

44. Implementation of DC-ADM 803's revised provisions for the handling of legal mail by Superintendent Kauffman and Lieutenant Younker at SCI Huntingdon has no reasonable connection to the advancement of any legitimate state interest.

45. Defendants Wetzel, Moore Smeal, Bickell, and Wererowicz ordered Superintendent Kauffman to implement DC-ADM 803's revised provisions for the handling of legal mail without taking adequate steps to monitor and ensure compliance.

46. Superintendent Kauffman and Lieutenant Younker deviated from the provisions of DC-ADM 803 when they implemented its revised procedures at SCI Huntingdon.

## Genesis and Intent
## Of Revised Procedures for Legal Mail

47. DOC promulgated the revised version of DC-ADM 803 system-wide and implemented the revised procedures as to handling of legal mail on October 3, 2018 in a sudden and arbitrary manner and without first identifying any legitimate state interest that the new procedures for legal mail were reasonably designed to advance.

48. The procedures for handling legal mail that DOC imposed on October 3, 2018 (hereinafter "new procedures") have no rational connection to any legitimate state interest.

49. The new procedures are designed to advance the improper purpose of concealing the responsibility of DOC employees for covert introduction of controlled substances into the prisons.

50. Drugs brought into the prisons by DOC staff, or with the knowledge and assistance of DOC employees, have sickened numerous staff and inmates over the last two years.

51. On information and belief, on one occasion in early 2018, an inmate who had been denied his prescribed pain medication after extraction of a wisdom tooth then ingested a substance made available with the help of DOC staff.  Under the influence of that unprescribed drug, the inmate attacked a corrections officer and kicked him to death.

52. That tragic death, together with press reports of numerous overdoses and poisonings from contraband substances brought into the prisons, resulted in political pressure on Defendant Wetzel to take some sort of action.

53. The new procedures were drafted over a period of several months, with the active personal involvement of Defendants Wetzel, Moore Smeal, Bickell, Wenerowicz, Roberts, Kashmere, and Goodman.

54. The full details of those defendants' actions await discovery, but much is already disclosed in declarations and other filings on the docket of another case in this district, that is, <u>Pennsylvania Institutional Law Project, et al., v. Wetzel, et al</u>, No. 1:18-cv-2100.

55. On information and belief, the defendants have identified no incident where an attorney used legal mail to send a controlled substance into any DOC prison.

56. Defendants Wetzel, Moore Smeal, Bickell, and Wenerowicz, on the recommendations of Defendants Roberts, Kashmere, and Goodman, imposed new procedures for legal mail as a means to accomplish improper objectives, including: to create the impression that appropriate measures had been adopted; to distract attention from the culpability of DOC employees for the illicit introduction of controlled substances into the prisons; and to increase the difficulties of counsel who represent prisoners in civil-rights litigation against DOC employees.

57. Defendants know that the new procedures are a pretense, inasmuch as the former procedures already provided adequate means of screening legal mail for potential contraband and there is no record of any attorney using legal mail to send drugs into any DOC prison.

## CAUSE OF ACTION

### Count I
### Violation of First Amendment

58. Paragraphs 1 through 57 are incorporated here by reference.

59. The First Amendment of the United States Constitution, as incorporated in the Fourteenth Amendment, prohibits the states and their agents from "abridging the freedom of speech."

60. Defendants interfered with Plaintiff Lane's communication with his attorney by confiscating, copying, reading, and otherwise interfering with privileged legal mail, in the ways described herein, for improper purposes, with the intent of depriving Lane of constitutionally guaranteed rights, in a manner that exceeds the infringements of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest.

61. Defendants interfered with Plaintiff White's communication with his attorney by confiscating, copying, reading, and otherwise interfering with privileged legal mail, in the ways described herein, for improper purposes, with the intent of depriving Lane of constitutionally guaranteed rights, in a manner that exceeds the infringements of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest.

62. As a direct result of the improper actions, omissions, and other improper conduct of the individual Defendants, both Plaintiff Lane and Plaintiff White have sustained injuries to their constitutional rights under the First Amendment, as described herein, and those injuries continue.

63. As a direct result of the improper actions, omissions, and other improper conduct of the individual Defendants, both Plaintiff Lane and Plaintiff White have been hindered in their efforts to litigate other cases in this district, through counsel, so as to achieve redress for prior denials of their civil rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Honorable Court:

A. Award injunctive relief to Plaintiffs by enjoining Defendants from implementing the new procedures for legal mail that are imposed by DC-ADM 803 in the version effective October 3, 2018;

B. Award compensatory damages to Plaintiffs against the Defendants;

C. Award punitive damages to Plaintiffs against the Defendants;

D. Award the costs of this action to Plaintiffs including but not limited to those available under 42 U.S.C. § 1988;

E. Award reasonable attorney's fees to Plaintiffs, including but not limited to those available under 42 U.S.C. § 1988; and

F. Award such other and further relief as this Court may deem appropriate.

Respectfully submitted,

**/s/ Marianne Sawicki**
MARIANNE SAWICKI
PA  313471
2530 South Blair Avenue
Huntingdon, PA 16652
Phone:       (814) 506-2636
FAX:         (814) 644-6884
MarianneSawicki@verizon.net
Attorney for Plaintiffs

Date:  January 11, 2019